IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

Dr. B.,[1]                          )
                                    )
            Plaintiff,              )
                                    )
vs.                                 )   Civil No. 17-cv-1243-DGW[2]
                                    )
COMMISSIONER OF SOCIAL              )
SECURITY,                           )
                                    )
            Defendant.              )

## **MEMORANDUM and ORDER**

**WILKERSON, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), the pro se plaintiff seeks judicial review of the final agency decision denying her application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) Benefits pursuant to 42 U.S.C. § 423.

## **Procedural History**

Plaintiff applied for DIB and SSI in January 2014, alleging a disability onset date of September 1, 2013. After holding an evidentiary hearing, an ALJ denied the application on November 16, 2016. (Tr. 16-24). The Appeals Council denied plaintiff's request for review, making the ALJ's decision the final agency decision subject to judicial review. (Tr. 1). Plaintiff exhausted administrative remedies

---

[1] Plaintiff apparently uses "Dr." as her first name. See, Tr. 328. Her full last name will not be used in this Memorandum and Order due to privacy concerns. See, Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

[2] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. §636(c). See, Doc. 17.

and filed a timely complaint with this Court.

## Issue Raised by Plaintiff

Plaintiff filed a short brief at Doc. 25. She says that she is "neither getting better nor younger." She says she is working as a substitute teacher, but that job is too stressful.

## Applicable Legal Standards

To qualify for DIB or SSI, a claimant must be disabled within the meaning of the applicable statutes.[3] Under the Social Security Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

To determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform her former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 404.1520.

An affirmative answer at either step 3 or step 5 leads to a finding that the plaintiff is disabled. A negative answer at any step, other than at step 3, precludes

---

[3] The statutes and regulations pertaining to DIB are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416. As is relevant to this case, the DIB and SSI statutes are identical. Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Most citations herein are to the DIB regulations out of convenience.

2

a finding of disability. The plaintiff bears the burden of proof at steps 1–4. Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

It is important to recognize that the scope of judicial review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). The Supreme Court defines substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See, *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

## The Decision of the ALJ

The ALJ followed the five-step analytical framework described above. He determined that plaintiff had worked part-time but not at the level of substantial gainful activity since the alleged onset date. She was insured for DIB through December 31, 2016. The ALJ found that plaintiff had severe impairments of non-ischemic cardiomyopathy and status post-surgery for uterine fibroids with associated anemia.[4]

The ALJ found that plaintiff had the RFC to do light work, limited to low stress work defined as having only occasional decision-making and occasional changes in work setting. The ALJ specified that the stress restriction resulted from her cardiovascular impairment and was not related to her mental health; she "must avoid stress in order to maintain normal cardiac activity." (Tr. 19).

Based on the testimony of a vocational expert, the ALJ found that plaintiff was not able to do her past relevant work as a podiatrist because it was not low-stress, but she was not disabled because she was able to do other jobs that exist in significant numbers in the national economy.

## The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the points raised by plaintiff.

1. **Agency Forms**

---

[4] "Non-Ischemic cardiomyopathy is a generic term which includes all causes of decreased heart function other than those caused by heart attacks or blockages in the arteries of the heart." https://www.urmc.rochester.edu/highland/departments-centers/cardiology/conditions/non-ischemic.aspx, visited on January 8, 2020.

Plaintiff was born in 1963 and was almost 53 years old on the date of the ALJ's decision. (Tr. 254). She had worked as a self-employed podiatrist beginning in 1996. She was working part-time when she applied for benefits. (Tr. 259).

### 2. Evidentiary Hearing

Plaintiff was not represented by an attorney at the hearing in August 2016. (Tr. 33). Her attorney had withdrawn from representing her in July 2016. (Tr. 172).

Plaintiff was still seeing a few patients. She worked about 15 hours per week, sometimes less. (Tr. 48-49).

Plaintiff testified that she had a hysterectomy in March 2015 because of uterine fibroids that were causing extreme anemia. (Tr. 42). The fibroids caused excessive menstrual bleeding and she became severely anemic. (Tr. 50). The hysterectomy solved the problem of excessive bleeding and anemia. In the pre-op workup for the surgery, she had an abnormal EKG, and was therefore referred to Prairie Cardiology. The cardiologist determined she had some kind of ischemic event.[5] She had episodes where her heart would overwork if she was stressed. She was put on medication. She was not given any restrictions on activities. If she gets "too worked up," she gets heart palpitations. Dealing with stressful situations causes the palpitations. (Tr. 53-57).

The "biggest obstacle" to her working is dealing with work stress. (Tr. 58-59).

---

[5] The cardiologist's records give a diagnosis of *nonischemic* cardiomyopathy. The use of "ischemic" in the transcript could be a transcription error.

A vocational expert (VE) also testified. The VE testified that a person with plaintiff's RFC assessment could not work as a podiatrist, but she could do other low-stress jobs at the light exertional level. (Tr. 60-62).

### 3. Relevant Medical Records

Plaintiff was seen at Prairie Cardiovascular between March 2015 and April 2016.

Plaintiff was first seen on March 11, 2015, because of an abnormal EKG. Dr. Satwani, a cardiologist, noted that plaintiff had no ischemic symptoms. She had good functional capacity with no history of exertional chest pain or shortness of breath. He ordered an echocardiogram. (Tr. 446). The echocardiogram showed a mildly enlarged left ventricle with estimated left ventricular ejection fraction of 50%.[6] (Tr. 408).

In June 2015, the cardiologist noted that her ejection fraction was "mildly reduced." Recent stress testing showed no perfusion abnormalities. Holter monitoring showed occasional PVCs.[7] She was prescribed Carvedilol and Lisinopril. (Tr. 438).

In January 2016, Dr. Satwani gave diagnoses of nonischemic cardiomyopathy, stable, and palpitations, improved. Her blood pressure was on

---

[6] "The ejection fraction is usually measured only in the left ventricle (LV). The left ventricle is the heart's main pumping chamber. It pumps oxygen-rich blood up into the upward (ascending) aorta to the rest of the body. An LV ejection fraction of 55 percent or higher is considered normal. An LV ejection fraction of 50 percent or lower is considered reduced. An LV ejection fraction between 50 and 55 percent is usually considered 'borderline.'" https://www.mayoclinic.org/ejection-fraction/expert-answers/faq-20058286, visited on January 9, 2020.

[7] "Premature ventricular contractions (PVCs) are the most common cause of irregular heart rhythms." https://my.clevelandclinic.org/health/diseases/17381-premature-ventricular-contractions, visited on January 10, 2020.

the low side. She was taking Carvedilol and Lisinopril and was stable from a cardiac standpoint. (Tr. 430).

In April 2016, Dr. Satwani again indicated diagnoses of nonischemic cardiomyopathy, stable, and palpitations, improved. She had no complaints and denied palpitations or chest pain. She was taking Carvedilol and Lisinopril. She was stable from a cardiac standpoint and had no heart failure symptoms. (Tr. 426). He ordered a repeat echocardiogram which showed an estimated left ventricular ejection fraction of 45%. (Tr. 410).

## **Analysis**

The ALJ reasonably concluded that the record supports a conclusion that plaintiff was capable of light exertion low-stress work as of the date of his decision. Plaintiff does not offer any specific challenge to that conclusion.

Plaintiff says that says that she is "neither getting better nor younger." However, plaintiff's condition at the present time is irrelevant. The issue for the Court is whether the record in front of the ALJ provides substantial evidence to support his November 16, 2016, decision. Plaintiff can, of course, file a new application for disability benefits based on her current condition.

The crux of plaintiff's complaint seems to be that her job as a substitute teacher is too stressful. However, the ALJ limited her to low-stress work, defined as work requiring only occasional decision-making and occasional changes in work setting. Substitute teacher is not a low-stress job. Plaintiff's difficulty in functioning as a substitute teacher is not relevant to the issue before the Court.

Plaintiff has not identified any error requiring remand. The Court has

7

carefully reviewed the record and the ALJ's decision and has not detected any legal errors. The medical evidence and plaintiff's own testimony support the conclusion that she was capable of light exertion low-stress work as of the date of the ALJ's decision. Even if reasonable minds could differ as to whether plaintiff was disabled at the relevant time, the ALJ's decision must be affirmed if it is supported by substantial evidence, and the Court cannot substitute its judgment for that of the ALJ in reviewing for substantial evidence. *Burmester,* 920 F.3d at 510; *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012).

## Conclusion

After careful review of the record as a whole, the Court is convinced that the ALJ committed no errors of law, and that his findings are supported by substantial evidence. Accordingly, the final decision of the Commissioner of Social Security denying plaintiff's application for disability benefits is **AFFIRMED**.

The Clerk of Court is directed to enter judgment in favor of defendant.

**IT IS SO ORDERED.**

**DATE:   January 15, 2020.**

*[signature: Donald Wilkerson]*

**DONALD G. WILKERSON
U.S. MAGISTRATE JUDGE**